## LITTLE v. FRENCH.
### No. 876.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 9, 1950.

Decided Feb. 16, 1950.

Rehearing Denied March 1, 1950.

Herman Miller, Washington, D. C., for appellant.

Louis F. Frick, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This action was one for possession of an apartment for the landlord's "immediate and personal use and occupancy as a dwelling," as authorized by the local Rent Act.[1] The trial judge refused to take from the jury the question as to whether the landlord had accepted rent payments for periods, after the expiration of the notice to quit. The jury returned a verdict in favor of the landlord and the tenant appeals, contending that it was solely a question of law to be determined by the judge.

The record discloses that the landlord purchased a four-unit apartment house early in 1949 so that she might take up her residence in Washington and be near her sons. After deciding that she wanted the apartment occupied by defendant Little (appellant here), she returned to Minnesota and left the details of the transaction to one of her sons who acted as her agent. A

[1]. Code 1940, Supp. VII, § 45—1605(b), (2).

formal notice to quit, dated April 16, 1949, was served on Little giving him until June 1, 1949 (about forty-five days) to vacate. The notice contained the sentence: "You will be expected to pay rent up until the time you give possession."

In evidence were four postal money orders, each for one month's rent, which were sent by the tenant under circumstances later recited herein. The tenant argues that the receipt of these money orders by the landlord's agent amounted to an "acceptance" of rent and therefore constituted a waiver of the notice to quit on which the possessory action was predicated. From the money orders themselves, their transmittal envelopes, postal receipts, and testimony at the trial, it appeared that the following took place:

■ After receipt of the notice, the tenant had a money order issued for the May rent and sent it, as he had sent previous payments, to the Enterprise Realty Company, agent for the former landlord.[2] A second money order was similarly issued for June rent and sent to the same company. Both were returned to the tenant, but he said he did not know of their rejection until after the suit was filed. He said he had not opened the return envelope, assuming that it merely contained receipts for rent payments.[3]

After the filing of the action in the court below, the tenant adopted a different tactic. On July 2 and August 5, 1949, he again obtained money orders for rent but these times named the landlord, Mrs. French, as payee. On July 2, he enclosed the first three money orders in an envelope addressed to Mrs. French and sent it to her son's address by registered mail. This failed of delivery because Mrs. French was still away from this city. Thereupon the tenant again sent out the money orders

by registered mail, but this time addressed them to the landlord's son. This time the son did not return them but kept them in his custody until the date of trial, August 12, 1949. This he did on the advice of counsel who saw "no point. in bouncing them back and forth in the mails."

Thus by the time the trial date arrived, there had been repeated tenders of rent by the tenant, presumably in order to accomplish a waiver of the notice to quit or to effect a delay in the eviction proceedings. As we have seen, two installments of rent had been sent to and rejected by the realty company; and subsequently an effort was made to deliver the rent payments to the landlord herself, but this effort failed. Finally, on July 19, the landlord's son received the first three money orders and on August 6, another one. None of these were cashed but were held for the short intervening period until the time of trial on August 12. And it was amid the tender and rejection of the several money orders that the landlord filed her court action demanding possession of the apartment.

The tenant claims that it was error to submit to the jury the question of acceptance of rent because it was not disputed that the several money orders were in the possession of the landlord's agent at the time of trial. Because physical receipt of the money orders was admitted, the tenant argues that the failure to return them and their subsequent retention until the trial amounted to an "acceptance" as a matter of law.

■ We think this argument is based on a misconception of law and that under the circumstances of this case the trial judge was entirely right in refusing to take from the jury the issue of "acceptance."

■ The tenant argues as if receipt were the same as acceptance. But the rule

2. The disposition of this particular money order is not material to the case. Its "acceptance" by the landlord would not have prejudiced her case since it was for rent during the running of the notice. Acceptance under these circumstances does not constitute a waiver of the notice. Pointer v. Shepard, D.C.Mun.App., 49 A.

2d 659; Moncure v. Curry, D.C.Mun. App., 42 A.2d 143.

3. It is not clear from the testimony on just what dates these two money orders were rejected by the realty company. Both were later tendered to the landlord and again rejected, although at the time of trial they were in the custody of the landlord's son.

is well established that acceptance involves more than a mere physical transfer of property. "An acceptance," as we have said, "comprehends the receipt of something plus an intention to retain it." [4] Here there was a receipt of the money orders after numerous tenders by the tenant. But the record contains clear evidence strongly tending to negate any intention to retain or "accept" the payments. The several rejections of the tenders, the demand for the apartment unit, the filing of the court action, the moving of the landlord from Minnesota, and the other evidence for the plaintiff all tend to show a clear determination to obtain possession of the apartment as soon as possible. And they are all inconsistent with an intention to waive the notice to quit. These circumstances taken together with all the other evidence in the case clearly raised an issue of fact to be determined by the jury. They also had a material bearing on the issue of the landlord's good faith, which was fully litigated at the trial, though not put in issue before us in this court.

We think that reasonable men might honestly differ as to the inferences to be drawn upon the admitted facts: that is to say, whether it could be inferred from the retention of the money orders that the landlord intended to accept them as rent payments and waive the notice to quit. Hence, as we ruled some years ago, a jury question was presented.[5] We note also that it has been held that "intention is usually a question of fact, and it is always a question of fact where, from other uncontroverted facts relative to intention, contradictory inferences may be drawn." [6]

In his motion for a directed verdict, tenant's counsel persistently argued that the retention of the money orders for more than three weeks was for an unreasonable period of time. Under the circumstances outlined above, and with the court action awaiting almost immediate trial, the judge below could not say, nor can we, that re-

tention for this period was so unreasonable as to amount to an acceptance of the rent and a waiver of the notice as a matter of law.

Affirmed.

---

4. Givens v. Goldstein, D.C.Mun.App., 52 A.2d 725, 726, and cases cited.

5. Yellow Cab Co. of D. C. v. Griffith, D.C. Mun.App., 40 A.2d 340; Canada Dry Ginger Ale Co. v. Jochum, D.C.Mun.App., 43 A.2d 42.

6. Hoff v. Hackett et al., 148 Wis. 32, 134 N.W. 132, 133.