**RUBENSTEIN v. SWAGART et al.**

No. 892.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 27, 1950.

Decided March 31, 1950.

Rehearing Denied April 10, 1950.

Herman Miller, Washington, D. C., for appellant.

David A. Hart, Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This was a suit for possession of real estate presently occupied as a restaurant which has been leased to new parties, together with other property, for the purpose of erecting thereon a large commercial garage. The tenant, owner of the restaurant business, resisted the action on several grounds having to do with a thirty days' notice to quit and with service of process and on the additional ground that he owned an equitable lease of the property. All these contentions were decided in favor of the landlord, some by the court and the remainder by a jury, and from a judgment against the tenant for possession he appeals.

The first error assigned has to do with procedure followed in the Municipal Court. The tenant, desiring to contest the service of process upon him, filed what he denominated a motion to quash service and demanded a jury trial on issues of fact alleged to have been raised by such motion. What he desired was a separate jury trial on his motion and another jury trial (in the event the issues of the motion were decided against him) on the merits of the case. This question came on for argument before the Chief Judge of the Municipal Court. That Judge decided that while rule 4(d) of the separate Landlord and Tenant rules of the court provided that a motion claiming lack of jurisdiction over a person shall be made before a further pleading is permitted or required, such rule did not require action by the court on such motion prior to further pleading.[1] Since Landlord and Tenant rule 7 requires that a jury demand must be accompanied by an answer under oath of the defendant, the Chief Judge decided that the tenant, if he desired a jury trial on the merits of the case, should proceed to file an answer and that one jury trial would be had on the issues raised by the motion to quash service and on the merits of the case. The Chief Judge recited "in a situation like that here presented that it is in the discretion of the Court for the purpose of avoiding unnecessary delays and avoiding an unnecessary burden upon the Court, that jury trial upon the motion should be, and it hereby is, deferred until the trial of the case on the merits, whether with or without jury."[2] The judge who tried the case agreed with and followed the holding of the Chief Judge.

We find no error in this determination. Questions such as were raised here formerly were raised by pleas in abatement, sometimes called dilatory pleas. When the present Municipal Court was established in 1942, it was directed by act of Congress to prescribe by rules "the forms of process, writs, pleadings and motions, and practice and procedure in such court, to provide for the efficient administration of justice, and the same shall conform as nearly as may be practicable to the forms, practice, and procedure now obtaining under the Federal Rules of Civil Procedure."[3] Rule

1. The rules of the Municipal Court, including the Landlord and Tenant rules, have been amended, effective April 1, 1950, but such amendments do not affect the present question. 78 W.L.R. 213.

2. The last annual report of the Chief Judge of the Municipal Court to the Attorney General, dated January 25, 1950, shows that approximately 48,000 L. and T. cases per annum are filed and that jury demands on such cases reached the total of 715 in the fiscal year beginning July 1, 1946, but dropped to 323 in the following year.

3. Code 1940, Supp. VII, § 11—756(b).

12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provided, among other things, that a motion for insufficiency of service should be made before a further pleading was permitted but that "no defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." Rule 12(b) of the "A" rules of the Municipal Court contains the same provision. It was not, however, included in the Landlord and Tenant rules. Subsequently, on December 16, 1946, the Municipal Court amended its rules and, so far as its Landlord and Tenant cases were concerned, adopted the provision now known as rule 4(b) providing among other things that "demurrers and pleas are abolished * * *."[4] It is further provided in Landlord and Tenant rule 4(e) that "all pleadings shall be so construed as to do substantial justice."

■ As a result of the ruling of the Chief Judge of the Municipal Court and of the trial judge, tenant elected to submit the question of service of process for decision by judge without a jury and that procedure was followed. Subsequently the merits of the case were tried by jury. It results that the right of a jury trial was accorded on both issues, but tenant elected not to exercise such right on the question of service of process. He claimed that he would be prejudiced by trying both issues before the same jury, but he did not show to the trial court nor has he shown here any particular manner in which he would be legally prejudiced. The rules of the Municipal Court, as do the Federal Rules of Civil Procedure, permit separate trials on separate issues, but they do not require separate trials on each issue. We hold, therefore, that in the Landlord and Tenant Branch of the Municipal Court parties are not entitled as a matter of right to separate jury trials on what used to be called pleas in abatement and that it lies within the sound discretion of the trial court to decide whether such separate jury trials shall be had.[5]

■ Tenant next complains that the trial court erred in deciding that service of process was made in accordance with law.[6] The deputy marshal who made the service testified that he went to the restaurant at about 9:40 a. m. but found it was not open for business. He returned at about 11 a. m. and found the restaurant open and a person there who subsequently described herself as cashier and manager. The deputy marshal handed a copy of the summons to this manager, who replied that she did not have any authority to accept the summons, whereupon the deputy marshal advised her that she had better call tenant and tell him that unless she accepted service the deputy marshal would post the summons on the front door of the restaurant. The manager thereupon telephoned tenant and informed the deputy marshal that the tenant had instructed her to accept service, which she did. That this manager was a person above the age of 16 years and was in possession of the premises was also testified to by the deputy marshal. There was contradicting evidence presented in behalf

---

4. 74 W.L.R. 1214 et seq. In the fall of 1946 there was a large backlog of landlord and tenant jury cases in the Municipal Court, and one of the reasons for such backlog was alleged to be the practice which had grown up of demanding separate jury trials on so-called pleas in abatement in landlord and tenant cases. It was as a result of this that so-called pleas in abatement were abolished by rule.

5. It might be wise procedure for the Municipal Court to make parts of its rule 12 applicable to landlord and tenant cases to make certain the filing of an answer does not constitute a general appearance but that question does not arise in the present case.

6. Code 1940, 11—736, provides: "The summons shall be served seven days, exclusive of Sundays and legal holidays, before the day fixed for the trial of the action. If the defendant has left the District of Columbia, or can not be found, said summons may be served by delivering a copy thereof to the tenant, or by leaving the same with some person above the age of sixteen years residing on or in possession of the premises sought to be recovered, and if no one be in actual possession of said premises, or residing thereon, by posting a copy of said summons on the premises where it may be conveniently read."

of tenant, but the trial court was entitled to believe the deputy marshal. Tenant bases his argument on this point largely on evidence presented subsequently at the trial that tenant was a resident of the District of Columbia and was at his home at the time of the telephone call. However, no evidence was presented that the deputy marshal was informed or knew where tenant was at the time of the telephone call or was in a position to know or did in fact learn to what number the manager telephoned. We think the deputy marshal was entitled to make the service upon the person obviously in charge of the premises, particularly when that person told him she was authorized by the tenant to accept service.[7] We conclude, therefore, that the trial court committed no error in this respect.

Tenant also complains that the thirty days' notice to quit was waived by the acceptance by the landlord of one month's rent in advance for the month of April 1949. The notice, dated March 1, 1949, and giving notice to vacate the premises on April 1, 1949, was signed by the five trustees under the will of the owner of the property, the late Christian Heurich, and was delivered personally to the tenant.

Among the Heurich trustees who signed the notice was Adolph G. Keyser, a real estate dealer, who had handed the notice to quit to tenant on March 1, and who also had managed the property for Mr. Heurich and for the Heurich estate throughout the tenant's occupancy. In spite of the service of the notice to quit the premises on April 1, the tenant on April 2 mailed to Mr. Keyser's office a check for the April rent. According to the testimony, Mr. Keyser did not see the check personally, but it was stamped for deposit by his secretary and taken to the bank by Mr. Keyser, together with a number of other checks. Mr. Keyser also testified that as soon as he discovered the check had gone to the bank he recalled it, and it was never credited to his account or that of the estate, nor charged to tenant. It was returned on April 14 to tenant, who sent it back to Mr. Keyser. Thereafter it was sent back and forth several times but was never accepted or redeposited in behalf of the estate. Tenant urges that this series of events constituted acceptance of the rent and hence that the notice to quit became ineffective. This was one of the issues submitted to the jury and by it decided in favor of the landlord. In Little v. French, D.C.Mun.App., 71 A.2d 534, under circumstances very similar to those present here we decided contrary to tenant's position. We need not here repeat what we said there. We believe the question was properly submitted to the jury. We may not disturb its verdict.

Tenant's next contention is based upon the fact that on July 26, 1949, the property was leased by the trustees of the Heurich estate to one Harry A. Swagart, who was to erect the proposed garage thereon. The lease also included several other lots. The term of the lease was to begin retroactively to May 1, 1949. The lease was made subject to outstanding tenancies, and the landlord agreed to assign all right, claim and interest in any outstanding leases and agreements with the existing tenants to the new tenant and "to assist the tenant in obtaining possession from the existing tenants when called upon to do so." The landlord and tenant suit to oust tenant was not actually filed until August 1, 1949, and was brought in the name not only of the trustees of the Heurich estate but of Mr. Swagart, the new tenant. As we understand tenant's position, it is that once the property was leased to Mr. Swagart the trustees lost all right to file the suit and since the thirty days' notice given by the trustees was not "assigned" to Mr. Swagart he had no right to bring the suit upon the basis of the thirty days' notice given by the trustees. To us it seems clear that the proposition carries its own answer. The purpose of a thirty days' notice to quit is to terminate a tenancy.[8] At the expiration of the notice to quit the tenancy no longer exists; only occupancy. Here there is no dispute between the Heurich estate and Mr. Swagart, and it is fundamental landlord and tenant law that a tenant can not dispute the title of his landlord. Here also the

---

7. Dewey v. Clark, 86 U.S.App.D.C. ——, 180 F.2d 766, Etelson v. Andre, D.C. Mun.App., 61 A.2d 806.

8. Code 1940, § 45—904.

694

suit was filed not only by Mr. Swagart but by the Heurich estate, owners of the property. We have been cited no law or cases holding that such procedure is not appropriate and legal. A number of authorities, however, have been cited in favor of the trial court's position.[9]

Tenant's final assignment of error is that the trial court admitted "evidence of compromise, and efforts made by the appellees to find a new store for the appellant and such evidence tended to prejudice the jury against appellant." No argument was made that the verdict of the jury in favor of the landlord was erroneous. There was no written lease and the representative of the Heurich estate testified he had made no promise to tenant, who had been allowed to remain in the property more than twelve years. The record shows that a recital of efforts of the Heurich estate to obtain other premises for tenant and of efforts of tenant to obtain more time in the Heurich property were outlined fully by tenant's counsel in his opening address to the jury. It results, therefore, that he can not now complain of admission of evidence on the same subject. We have read the somewhat lengthy record with care and are convinced no error was committed.

Affirmed.

9. J. & J. Slater, Inc. v. Brainerd, D.C. Mun.App., 43 A.2d 714; Yosemite Commissioners v. Barnard, 98 Cal. 199, 32 P. 982; Tiffany, Landlord and Tenant, § 273(n); Gelston v. Sigmund, 27 Md. 345.