THE UNITED ILLUMINATING COMPANY *v.* SYNTEX RUBBER CORPORATION

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 2-661-41802

Argued July 18—decided September 23, 1966

*Vincent M. Simko,* of Bridgeport, for the appellant (defendant).

*Robert B. Snow, Jr.,* of New Haven, for the appellee (plaintiff).

PRUYN, J. The plaintiff brought this action of summary process to recover possession of premises in Bridgeport leased to the defendant under a month-to-month tenancy. The defendant interposed a special defense that the tenancy continued because the plaintiff accepted rent from the defendant after service of a notice to quit.

The plaintiff is the owner of land and buildings (the former Locomobile plant) in Bridgeport, part of which it leased to the Dictaphone Corporation under a lease expiring on February 28, 1965. The Dictaphone Corporation subleased a portion of the leased premises to the defendant on a month-to-month tenancy. In January, 1965, the Dictaphone Corporation notified the plaintiff as well as the defendant that it would not exercise the renewal option contained in its lease from the plaintiff and would terminate its tenancy on February 28, 1965, which it did. The defendant and the plaintiff entered into negotiations, which continued to December, 1965, concerning the rental of about 6500 square feet. Pending these negotiations, the parties agreed on a month-to-month tenancy whereby the defendant would pay 75 cents a square foot for 6580 square feet, making a monthly rental of $411.25. The defendant commenced paying this monthly rent in March, 1965, and billing for the rent began in May, 1965. The billings covered rent for the succeeding month and included charges for electrical services rendered by the plaintiff to the defendant for the previous month. All billings were paid by checks mailed to the plaintiff. In the negotiations between the parties, the defendant was seeking to obtain a

two- or three-year lease, but the plaintiff was unwilling to rent the property for any long period of time.

On November 23, 1965, the plaintiff, through its real estate officer, orally notified the defendant to vacate the premises by December 31, 1965, since it had completed plans to demolish the plant occupied by the defendant and other tenants in order to erect a new generating station. Notice to quit on or before December 31, 1965, was served on the defendant on December 6, 1965, and a summary process summons and complaint was served on January 5, 1966. During November, 1965, the defendant paid, by two checks, arrears of charges for electrical service and arrears of rent and also the charges for October electrical services and rent for December, 1965. On December 20, 1965, a billing was rendered to the defendant for electrical services, only for the month of November, in the sum of $644.40, no rent being included in the bill; this was paid by check mailed to the plaintiff. On December 22, 1965, no bill having been rendered, the defendant issued its check for $411.25 to the plaintiff's order, with a notation for "Rent for December, acct. #81211-07151." This check was accepted by a cashier's receipt and credited to the electricity account of the defendant with the plaintiff.

The defendant attacks the finding of facts and the conclusions of the trial court in two respects. It claims that the negotiations between the parties resulted in a parol lease for a year and also that the acceptance of the December 22, 1965, check by the plaintiff was the acceptance of rent for January, 1966, and a waiver by the plaintiff of its summary process rights. As to the claim of a parol lease for a year, the trial court concluded that since the negotiations did not result in a firm agreement between the parties no parol lease was entered into

between them. There was conflicting testimony as to whether the plaintiff had assured the defendant that it need not worry about anything for a year. The trial court, having heard and seen the witnesses and the evidence, in the exercise of its prerogative resolved this conflict in favor of the plaintiff. There was ample evidence to support the findings on which the court's conclusion was based.

The principal thrust of the defendant's attack is directed against the trial court's finding as a fact, and the conclusion therefrom, that the acceptance of the December 22, 1965, check was not a waiver of the summary process proceedings. Waiver has been defined as "the intentional relinquishment of a known right." *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 257. "Acceptance of rent after a notice changing tenancy or after notice to quit does not necessarily operate to waive the notice. While the unconditional acceptance by a landlord of moneys as rent, which rent has accrued after the time the tenant should have surrendered possession will constitute strong evidence of the landlord's waiver of the notice to quit, waiver always rests on intent and is ever a question of fact." *Linnard* v. *Sonnenschein,* 94 Cal. App. 729, 735; see *Hudson* v. *Kuszynski,* 12 Conn. Sup. 264, 266; *Little* v. *French,* 71 A.2d 534, 536 (D.C. Mun. App.); *Rubenstein* v. *Swagart,* 72 A.2d 690, 693 (D.C. Mun. App.); 52 C.J.S., Landlord and Tenant, § 769 (f); 32 Am. Jur., Landlord and Tenant, § 1004. In the case before us, the evidence is clear that the December 22, 1965, check was marked by the defendant for December rent, that this rent had been previously paid, that there was no bill for rent outstanding, that the plaintiff credited it to the electricity account and that although no bill for electricity had been rendered, the defendant was liable under its month-to-month tenancy for the December electricity charges. There is nothing in

the evidence to show any intent by the plaintiff to accept this payment as rent. The finding that there was no waiver must stand. Very apt is the language of the court in *Western Union Telegraph Co.* v. *Pennsylvania R. Co.,* 123 F. 33, wherein after the railroad company had given the telegraph company notice to quit and to remove its poles from the railroad right of way on termination of a lease agreement on June 20, 1902, the telegraph company sent a "payment due June 20, 1902 as per contract" which was accepted by the railroad company. The court said (p. 36) : "In short, a sum of money which was not demanded nor demandable was voluntarily paid, not in extension of the term, but upon the erroneous assumption that it was due 'as per contract'; and although a minor officer or agent of the railroad company inadvertently accepted this payment, the notice which had been previously given was not, in our opinion, in any way affected thereby."

There is no error.

In this opinion Dearington and Kosicki, Js., concurred.