James TIPPETT, Trustee for the Revocable Trust of James Tippett, Appellant,

v.

Gregory DALY, Appellee.

No. 06–CV–1327.

District of Columbia Court of Appeals.

Argued May 1, 2008.
Decided Feb. 5, 2009.

Morris R. Battino, Washington, for appellant.

Carol S. Blumenthal, for appellee.

Before WASHINGTON, Chief Judge, and RUIZ and FISHER, Associate Judges.

FISHER, Associate Judge:

James Tippett appeals from judgments entered following a consolidated trial of his suit for possession of a dwelling and his tenant's suit for breach of contract.[1] The trial court held 1) that the tenant had timely invoked his rights under the Tenant Opportunity to Purchase Act ("TOPA"), D.C.Code §§ 42–3404.02 to 42–3404.13 (2001), by providing a written statement of interest within thirty days of receiving the owner's offer of sale, see D.C.Code § 42.3404.09(1) (2001); and 2) that the owner had waived a ninety-day notice to vacate for personal use and occupancy by accepting rent for a new term that began after the notice expired. We reverse the first judgment and affirm the second.

## I. The Factual and Procedural Background

The revocable trust of James Tippett owns a single-family dwelling which Gregory Daly ("the tenant") has rented for approximately thirty years. On April 28, 2001, pursuant to TOPA, see D.C.Code § 42–3404.03 (2001), the owner mailed an offer of sale which the tenant received on April 30.[2] The tenant testified that he mailed a statement of interest to the owner on May 18 and filed a copy with the Department of Consumer and Regulatory Affairs ("DCRA") the same day. The owner testified, however, that he did not receive the statement of interest until June 2.[3] On July 27, 2001, the tenant and his partner placed $20,000 in escrow as a "purchase contract deposit" and on July 30, the tenant hand-delivered a purchase contract to the owner. The owner did not sign the contract and the deposit remained in escrow at the time of trial.

Meanwhile, on May 17, 2001, the owner served the tenant with a ninety-day notice to vacate the premises by September 1, 2001. In the attached affidavit, the owner stated that he intended to occupy and use the premises as his own dwelling. The owner later testified that he intended to move into the house while he renovated it and his home in Bethesda, Maryland, but

---

1. Although the dwelling is owned by the revocable trust of James Tippett, we shall refer to Mr. Tippett as the owner or landlord.

2. This offer of sale is not contained in the record on appeal, but the parties do not dispute that it was mailed to and received by the tenant or that TOPA applies.

3. Prior to trial, the parties stipulated that the tenant "submitted a statement of interest to [the owner] dated May 18, 2001," but that "the date of receipt by [the owner] is disputed." However, the tenant failed to produce any evidence at trial to dispute the owner's testimony that he received the statement on June 2.

he did not explain whether he had changed his mind about selling the property.

The tenant continued to occupy the house after the notice to vacate expired on September 1, 2001. The owner acknowledged that he received rent for at least one month after the notice expired and did not indicate at the time that he still wanted the tenant to vacate. On September 11, 2001, the owner filed a suit for possession based on the expiration of the notice to vacate. On April 29, 2002, the tenant filed a complaint seeking damages, specific performance of the alleged contract for sale of the property, and an injunction ordering the owner to comply with TOPA.

Following a consolidated bench trial, the trial court directed the owner to "negotiate with [the tenant] in good faith for the sale of" the property. The court first found that the tenant had timely provided his statement of interest by mailing it on May 18. The court calculated the thirty-day period for response from the date the owner mailed the offer of sale, April 28, added three days for mailing and an additional day because April 29 was a Sunday, *see* Super. Ct. Civ. R. 6 (2001), and determined that the statement had to be provided by June 3, 2001. Moreover, the court held that the tenant's "acceptance of the offer of sale was complete upon mailing the statement of interest on May 18, 2001[,]" and that the statement of interest was therefore timely regardless of when the owner actually received it. (Bench Order and Op. at 4 (citing RESTATEMENT (SECOND) OF CONTRACTS § 63(a) (1981).) The court dismissed the complaint for possession, finding that the owner had waived the notice to vacate by accepting rent after the notice expired.

## II. The Statement of Interest

Under TOPA, an owner of a rental housing accommodation who wishes to sell the property must first "give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." D.C.Code § 42–3404.02(a) (2001). To fulfill this requirement, the owner must "provide each tenant and the Mayor a written copy of the offer of sale . . . ." D.C.Code § 42–3404.03 (2001). The time allowed for the tenant(s) to respond depends upon the number of units in the housing accommodation. For a single-family dwelling, "[u]pon receipt of a written offer of sale from the owner . . ., the tenant shall have 30 days to provide the owner and the Mayor with a written statement of interest." D.C.Code § 42–3404.09(1) (2001). If the tenant "has provided a written statement of interest in accordance with paragraph (1) of [§ 42–3404.09]," the owner must allow additional time for negotiation of a contract of sale, and, if a contract is agreed to, for settlement. D.C.Code § 42–3404.09(2), (3) (2001).

The owner argues that the trial court erred both in calculating the time within which the tenant was required to provide his statement of interest and in holding that the tenant had "provided" that statement when he mailed it on May 18. The tenant wisely concedes error on the first point. The statute states that, "[u]pon receipt" of the written offer of sale, the tenant shall have thirty days to provide a written statement of interest. D.C.Code § 42–3404.09(1) (2001). The tenant testified, and it was undisputed at trial, that he received the offer on April 30. Thus, the tenant had thirty days from April 30 (until May 30) to provide a statement of interest. TOPA has its own provision for calculating time periods, *see* D.C.Code § 42–3405.02 (2001),[4] and the trial court erred in relying

4. D.C.Code § 42–3405.02 (2001) (entitled "Time periods") provides: "If a time period

on a rule of civil procedure to extend the time prescribed by statute. *See* D.C.Code § 42–3405.11 (2001) ("If this chapter conflicts with another provision of law of general applicability, the provisions of this chapter control."); Super. Ct. Civ. R. 1 (2001) (the rules of civil procedure "govern the *procedure in all suits* of a civil nature . . . .") (emphasis added).

 The remaining question is whether the tenant "provide[d] the owner . . . with" the statement of interest when he placed it in the mail on May 18 or whether, as the owner contends, the tenant did not "provide [him] with" the statement until he received it on June 2. The meaning of "provide . . . with" is a question of statutory interpretation, and we review the trial court's decision *de novo*. *1618 Twenty–First Street Tenants' Ass'n, Inc. v. Phillips Collection*, 829 A.2d 201, 203 (D.C. 2003). "When the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further." *Id.* (quoting *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C.1999)). In determining the plain meaning, " 'the words of [the] statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.' " *Id.* (quoting *E.R.B. v. J.H.F.*, 496 A.2d 607, 609 (D.C.1985) (additional citation omitted)).

 Neither TOPA nor the related regulations define the term "provide . . .

with." *See* D.C.Code § 42–3401.03 (2001) (definitions section); 14 DCMR § 4799.1 (1991) (same). Thus, it is appropriate for us to look to dictionary definitions to determine the ordinary meaning of these words. *1618 Twenty–First Street Tenants' Ass'n, Inc.*, 829 A.2d at 203. "Provide" means "to supply for use" and is synonymous with "furnish." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1827 (2002); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1458 (3d ed.1992) ("[t]o furnish," "supply," or "make available"). In order to "use" the statement—to be able to read it and act upon it—the owner must have access to it. Therefore, "to supply [the statement of interest] for use" or to "make [it] available," the tenant must place it in the owner's possession. Depositing the statement in the mail may give rise to an inference that the owner will at some point receive it, *see, e.g., Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1087 (D.C.2007) (There is "a rebuttable presumption that a letter properly addressed, stamped, and mailed, and not returned to the sender, has been delivered to the addressee."), but the owner does not have possession of, or access to, the statement while it is in the mail stream. Thus, the plain meaning of the term "provide . . . with" indicates that the tenant must ensure that the statement reaches the landlord within thirty days.[5]

Practical considerations confirm our reading of the statute. Permitting the

---

running under this chapter ends on a Saturday, Sunday, or legal holiday, it is extended until the next day which is not a Saturday, Sunday, or legal holiday." May 30, 2001, was a Wednesday, so this statute does not operate to extend the thirty-day period under the circumstances presented here.

5. *Cf. Orius Telecommunications, Inc. v. District of Columbia Dep't of Employment Servs.*, 857 A.2d 1061, 1065 (D.C.2004) (upholding as reasonable Director's conclusion "that the

term 'paid' . . . means receipt of the payment by the claimant within the ten-day statutory time limit"; check was mailed within ten days but received after time limit had expired); *United States ex rel. B & R, Inc. v. Donald Lane Construction*, 19 F.Supp.2d 217, 223, 224 (D.Del.1998) (interpreting the term "give" in the Miller Act to mean "to put into the possession of another for his use"; notice must be received, not merely mailed, within ninety days).

tenant to invoke his right to purchase by placing a statement of interest in the mail on the thirtieth day would create uncertainty and impose a significant additional burden on the owner, who would have to decide, without guidance from the statute, how long to wait before concluding that the tenant had not responded. In this case, for example, it apparently took two full weeks for the mail to arrive. Requiring the owner to choose between further, potentially costly, delay in the sale or redevelopment of his property and possibly violating TOPA would serve none of the Act's salutary purposes, see D.C.Code § 42-3401.02 (2001 & 2008 Supp.) (stating purposes of the legislation), and we have seen no evidence that the legislature intended this result.[6] Thus, we adhere to the plain meaning of the statute and hold that the tenant must "provide the [owner] ... with" a statement of interest by ensuring that it reaches him within thirty days.[7]

The tenant's arguments to the contrary are unpersuasive. He urges us to interpose the "mailbox rule" that acceptance of an offer generally is effective "as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror...." RESTATEMENT (SECOND) OF CONTRACTS, § 63(a) (1981). We have seen no indication that the legislature intended to incorporate this common law rule by implication, and we do not find the analogy to this one aspect of contract law so compelling that it should alter our interpretation of the statutory deadline for submitting a statement of interest. *Cf. Orius Telecommunications, Inc. v. District of Columbia Dep't of Employment Servs.*, 857 A.2d 1061, 1068 (D.C.2004) ("[W]e cannot endorse the mailbox rule because its application ignores the existence of relevant statutory language and would nullify the essential holding of the director's interpretation that the relevant date under the statute is that of receipt by the claimant.").

Indeed, we think cases involving notice of intent to exercise an option to purchase are more pertinent and helpful. "It is at least the majority rule that notice to exer-

6. The legislative history of TOPA is consistent with the view that limiting the time for the tenant to respond was intended to reduce TOPA's burden on owners. As initially enacted, TOPA did not require tenants in accommodations of up to four units to submit their statement of interest within any specified period of time. Rental Housing Conversion and Sale Act of 1980, D.C. Law 3–86, §§ 409–10, 27 D.C.Reg. 2975, 2993–94 (1980). (Title IV of this Act is known as the Tenant Opportunity to Purchase Act of 1980. *See Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship*, 869 A.2d 329, 332 (D.C.2005)). The Council later amended the statute to limit the time within which the tenants of a housing accommodation of two to four units could respond to an offer of sale. Rental Housing Conversion and Sale Act of 1980 Amendments and Extension Act of 1983, D.C. Law 5–38, § 2(k), 30 D.C.Reg. 4866, 4872 (1983). The thirty day time period at issue here was later added after opponents of legislation renewing TOPA requested a similar limitation for single family dwellings. Rental Housing Conversion and Sale Act of 1980 Extension Amendment Act of 1988, D.C. Law 7–154 § 2(g), 35 D.C.Reg. 5715, 5716 (1988); COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS, REPORT ON BILL 7–462, THE "RENTAL HOUSING CONVERSION AND SALE ACT OF 1980 EXTENSION AMENDMENT ACT OF 1988," at 4–5 (June 27, 1988).

7. We do not consider here a situation where the owner fails to pick up his mail, is absent for several days, or otherwise frustrates timely receipt of notice. *See, e.g., Cities Service Oil Co. v. National Shawmut Bank of Boston*, 342 Mass. 108, 172 N.E.2d 104, 105 n. 1 (1961) ("Unavailability of the party to be notified may affect the rule [that notice to exercise an option is effective only upon receipt]."; *United States ex rel. B & R, Inc. v. Donald Lane Construction*, 19 F.Supp.2d 217, 225 n. 15 (D.Del.1998)) (referring to exception when "the receiver intentionally avoids the receipt of notice").

cise an option is effective only upon its receipt by the party to be notified unless the parties otherwise agreed." *Cities Service Oil Co. v. National Shawmut Bank,* 342 Mass. 108, 172 N.E.2d 104, 105 (1961) (option to purchase during term of lease ending on August 31; letter and deposit mailed on August 31, but received on September 1, did not timely exercise option). *Accord, Smith v. Hevro Realty Corp.,* 199 Conn. 330, 507 A.2d 980, 984 (1986) ("Unless the parties have agreed to the contrary, acceptance under an option contract is not effective until it is actually received by the offeror."); *Salminen v. Frankson,* 309 Minn. 438, 245 N.W.2d 839 (1976) (written exercise of option, mailed on the date option expired and received two days thereafter, was not timely). *See* RESTATE-MENT (SECOND) OF CONTRACTS § 63(b) (1981) ("an acceptance under an option contract is not operative until received by the offeror"). *See generally* George A. Locke, Annotation, *Timeliness of Notice of Exercise of Option to Purchase Realty,* 87 A.L.R.3d 805 (1978); *but see Pennsylvania Academy of Fine Arts v. Grant,* 404 Pa.Super. 62, 590 A.2d 9 (1991) (notice mailed to lessor before deadline for exercising option to purchase, but received after deadline, was nevertheless effective exercise of option under "mailbox rule").[8]

Nor are we persuaded by the fact that some provisions of TOPA expressly allow (or require) notice to be sent by mail. *See, e.g.,* D.C.Code § 42–3404.03 (2001) (offer of sale); D.C.Code § 42–3404.11(1) (2001) (application for registration as a tenant organization). Nothing we say in this opinion precludes the tenant from sending his statement of interest by mail. He simply has to make sure that the owner receives it within the thirty-day period. In other words, the tenant who elects to use the mail accepts the risk of delay in receipt. *Cf.* D.C.Code § 42–3404.11(1) (2001) (relating to accommodations with five or more units; "the delivery of the application for registration ... by hand or by first class mail shall be within 30 days of receipt of a valid offer").

 Finally, while we recognize that the Council intended that ambiguities in the statute be resolved in favor of strengthening tenants' rights, *see* D.C.Code § 42–3405.11 (2001); *Wilson Courts Tenants Ass'n, Inc. v. 523–525 Mellon Street, LLC,* 924 A.2d 289, 294 (D.C. 2007); *Allman v. Snyder,* 888 A.2d 1161, 1166 (D.C.2005), we "may not rewrite the statute to create ambiguity where the statutory scheme is unambiguous in establishing the meaning of its terms." *1618 Twenty–First Street Tenants' Ass'n, Inc.,* 829 A.2d at 204 (citation and internal quotations omitted). "[A]s is true of any guide to statutory construction, [this rule] only serves as an aid for resolving an ambiguity; it is not to be used to beget one." *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961) (footnote omitted). And the fact that the parties (or judges) disagree about the

---

**8.** At oral argument the tenant's counsel cited a section of the rental housing regulations which provides that "[s]ervice by mail shall be complete upon mailing." 14 DCMR § 3911.5 (1991). "Service" is a term of art, however, and this provision applies to documents required to be "served" under the rental housing regulations. *See, e.g.,* 14 DCMR § 4014.1 (*motion for continuance of a scheduled hearing or for an extension of time to file a pleading*), § 4204.10(c) (certificate of elec-

tion to increase rent ceiling), § 4300.1 (notice to vacate). The terms "serve" or "service" are not found in those regulations applying to the sale of residential rental housing. *See* 14 DCMR §§ 4711.1–4711.13 (1991). Moreover, the legislature chose the term "provide ... with" rather than "serve," and we must presume that the distinction was intentional. *In re C.L.M.,* 766 A.2d 992, 994 (D.C.2001) (noting "that a statute should be interpreted so as to give effect to every word").

meaning of the statute does not render it ambiguous. *Cf. Lumpkins v. CSL Locksmith, LLC,* 911 A.2d 418, 422 (D.C.2006) ("Whether a contract is ambiguous is a question of law. A contract is not ambiguous merely because the parties disagree over its meaning . . . ." (citation omitted)).[9] Having found no ambiguity in the statute, we apply its plain meaning.

The tenant acknowledged that he received the owner's offer of sale on April 30, 2001, and he presented no evidence to dispute the owner's testimony that he did not receive the tenant's statement of interest until June 2, 2001, more than thirty days later. See note 3, *supra.* Accordingly, the tenant did not "provide" the owner "with" his statement of interest within thirty days of receiving the offer of sale. Because the tenant did not timely invoke his right to purchase under TOPA, the trial court erred in ordering the owner to negotiate a contract for sale to the tenant.[10]

### III. The Notice to Vacate

■ The owner/landlord next argues that the trial court erred in finding that he waived the ninety-day notice to vacate for personal use and occupancy when he accepted rent after the notice expired. "A natural person with a freehold interest in the rental unit may recover possession of a rental unit where the person seeks in good faith to recover possession of the rental unit for the person's immediate and personal use and occupancy as a dwelling." D.C.Code § 42–3505.01(d) (2001 & 2008 Supp.). The owner seeking to recover possession under this subsection must serve the tenant with a ninety-day notice to vacate before filing an action for possession. *Id.* We have recognized, however, that

"the receipt of rent by a landlord, after notice to quit, . . . for a new term or part thereof, amounts to a waiver of his [or her] right to demand possession under that notice" unless it is clear from all the circumstances that, by accepting rent from a holdover tenant, the landlord did not intend to waive an "expressed intention to enforce the lease."

*Habib v. Thurston,* 517 A.2d 1, 6 (D.C. 1985) (alteration in original) (citations omitted).

■ The landlord may "accept[ ] the rent without prejudice by expressly reserving the right to enforce the notice to quit." *Id.* at 7. Where the landlord accepts future rent without reserving the right to enforce the notice, however, "the landlord ha[s] the burden of rebutting the implication that, in receiving funds tendered as future rent, he intended to waive termination of the lease." *Id.* Whether the landlord intended to accept the rent for

9. Our dissenting colleague finds ambiguity because D.C.Code § 42–3404.10(1) (2001) seems to equate "provide" with "submit" and Webster defines "submit" as "to send or commit for consideration, study, or decision." However, Webster also defines "submit" as "to present or make available for use or study," which is essentially synonymous with the definition of "provide" discussed above. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2277 (2002). We note as well that D.C.Code § 42–3404.11(1)(C) (2001), requires, with respect to accommodations with five or more units, that the tenants "deliver an application for registration to the Mayor and the owner by hand or by first class mail within 45 days of receipt of a valid offer." In other words, the mail must be delivered within the statutory deadline. Thus, the statutory context is fully consistent with the dictionary definition of "provide."

10. Because we rule in the owner's favor on this ground, we need not address his alternative argument that the trial court erred in finding that the tenant filed a copy of the statement of interest with DCRA (the Mayor's representative), as the statute requires. *See* D.C.Code § 42–3404.09(1) (2001).

occupancy after the notice expired and to waive the notice to vacate are questions of fact, and we will not disturb the trial court's findings unless they are "plainly wrong or without evidentiary support." *Id.*

*Habib* is controlling here. In that case, the landlord served a notice to quit or cure by November 30, citing overcrowding in breach of the lease. *Id.* at 4. The tenant did not vacate, but on December 1 tendered a money order for December rent which the landlord endorsed and deposited. *Id.* The landlord then sued for possession on December 3. *Id.* We affirmed the trial court's holding that the landlord waived the notice to quit by accepting the rent, noting that the lease did not contain a provision stating that acceptance of rent for a period after expiration of such notice would not be considered a waiver. Moreover, the landlord had accepted the money order without disclaiming an intent to accept it as December rent or expressly reserving the right to enforce the notice. *Id.* at 7.

 Here, the landlord admitted that he received rent for at least one month after the notice to vacate expired and that he did not tell the tenant when he accepted the rent that he still intended to enforce the notice to vacate. The landlord did not present evidence of a lease provision which stated that acceptance of rent after expiration of a notice to vacate would not waive the notice. *See id.; cf. In re Wil–Low Cafeterias, Inc.,* 95 F.2d 306, 309 (2d Cir. 1938) (finding breach of lease not waived where lease provided that acceptance of rent would not constitute waiver). Nor did the landlord demonstrate that he rejected the tenant's tender of rent, *cf. Lit-*

*tle v. French,* 71 A.2d 534, 535–36 (D.C. 1950) (upholding a verdict in favor of the landlord where landlord first tried to return rent, did not cash new money orders tendered by the tenant, and continued to demand possession), or that his acceptance of the rent was inadvertent, *cf. Rhodes v. United States,* 310 A.2d 250, 251–52 (D.C. 1973) (upholding finding that receipt of rent did not demonstrate intent to waive notice to quit where institutional landlord with many tenants collected rent through agent); *Rubenstein v. Swagart,* 72 A.2d 690, 693 (D.C.1950) (upholding judgment for landlord who did not personally see rent check and "recalled" it when he realized it had been taken to the bank; check was never credited to his account or charged to tenant). While the landlord in this case did file an action for possession within two weeks after the notice to quit expired, that does not distinguish this case from *Habib,* where we upheld a finding that the landlord had waived the notice although he sued for possession just three days after the notice expired. 517 A.2d at 4, 7. The trial court's finding here that the landlord waived notice by accepting the rent was not "plainly wrong or without evidentiary support." *Id.* at 7.[11] *See* D.C.Code § 17–305(a) (2001).

## IV. Conclusion

The trial court's judgment directing the owner to negotiate with the tenant for sale of the dwelling is reversed and that case is remanded for entry of an order dismissing the tenant's complaint. The judgment of the trial court denying the landlord's complaint for possession is affirmed.

*So ordered.*

---

11. Because we affirm the trial court's conclusion that the landlord waived the notice to vacate by accepting rent for a new term, we need not address whether the owner, a revo-

cable trust, was a "natural person" who could seek possession for personal use and occupancy under the statute. D.C.Code § 42–3505.01(d) (2001 & 2008 Supp.).

RUIZ, Associate Judge, dissenting in part:

I agree with the majority in affirming the trial court's dismissal of the owner's suit for possession, but disagree with reversing the trial judge's order requiring the owner to negotiate with the tenant as required by the Tenant Opportunity to Purchase Act ("TOPA"), D.C.Code §§ 42–3401.01 to 42–3404.13 (2001). Specifically, I do not agree with the conclusion that, to be effective, the tenant's expression of interest to purchase that triggers the negotiation period must be received by the owner within the period set in the statute. I believe that a contextual analysis, and the letter and purpose of TOPA lead to the conclusion that only mailing within the statutory period is required to preserve the tenants' rights under TOPA.

The statute uses the phrase "upon receipt" of an offer of sale from the owner to trigger the 30–day period for tenants to give notice of interest to purchase the property. D.C.Code § 42–4304.09(1) (2001). Thus, it is clear that the legislature could have used similar language if it intended that the statement of interest also must be "received" by the owner within 30 days. It did not do so, however, and used instead the more ambiguous word "provide."

In considering statutory language, the judicial task is to divine legislative intent and give it effect. Where a word's precise meaning is uncertain, its use elsewhere in the statute can shed light on the legislature's intent. *See In re Jacoby*, 945 A.2d 1193, 1198 (D.C.2008) ("[T]he familiar maxim of statutory interpretation . . . counsels us to consider the statute as a whole, and, if possible, discern an interpretation that

will harmonize and accord full force and effect to all of its provisions, without rendering any part meaningless."). In addition, the TOPA statute itself provides the court with guidance on how it is to be interpreted, and specifically directs that "resolution of ambiguity by . . . a court [be] toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." D.C.Code § 42–3405.11 (2001).

Here, the legislature used the same word "provide" in the next section of the statute, D.C.Code § 42–3404.10(1) (2001), which similarly sets out time periods for offers to and expressions of interest from tenants, but with respect to accommodations with two to four units, as opposed to the single family residence at issue in this case.[1] In that section, the legislature equates "provide" with "submit." *See id.* ("Upon receipt of a written offer of sale from the owner . . ., a group of tenants acting jointly shall have 15 days *to provide* the owner and the Mayor with a written statement of interest. Following that time period, if the tenants acting jointly have failed *to submit* a written statement of interest, an individual tenant shall have seven days *to provide* a statement of interest to the owner and the Mayor." (emphasis added)).

The majority considers this a "plain meaning" case and relies on the dictionary meaning of "provide" as synonymous with "supply for use" and "furnish." From that definition, it reasons that for the tenant's expression of interest to purchase to be of use, the owner must have received it within the statutory period. But the same dictionary defines "submit"—which the

---

1. That section differs from the one in the appeal before us only in that it creates the possibility that the tenants may first act jointly to purchase their accommodations by ex-

pressing interest within fifteen days of receiving the owner's offer of sale or, failing joint action, any tenant has seven days to express an interest to purchase individually.

TOPA statute equates with "provide"—as "to send or commit for consideration, study or decision." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2277 (2002). For that reason, resort to the dictionary does not suffice to answer the question in this case.

Assuming, as seems reasonable, that the legislature intended "provide" to have the same meaning in the two sections of the statute dealing with tenants' right to purchase single family dwellings and buildings with two to four units, TOPA should be interpreted to allow tenants to fully benefit from the time period in which to "provide" or "submit" a statement of interest, whether it be thirty, fifteen, or seven days.[2] Had the legislature meant otherwise it would have said—as it did in connection with the statutory section concerning accommodations with five or more units where the response must be from a tenant organization, not individual tenants—that the expression of interest to purchase must be "deliver[ed] ... by hand or by first class mail" within the prescribed period. D.C.Code § 42–3404.11(1) (2001). Therefore, viewing the word "provide" in its statutory context, and the legislature's unequivocal preference that tenants' rights be strengthened "to the maximum extent permissible under the law," D.C.Code § 42–3405.11 (2001), I would hold that appellant validly exercised his right under TOPA because he "provided" a timely statement of interest to the owner by mailing it within thirty days of receiving the offer of sale.

I believe that the majority's analogy of the tenants' rights under TOPA to an option contract does not hold up. The "mailbox rule" is usually held inapplicable to option contracts, and, as the majority notes, acceptance is operative only when exercise of the option is received. *See* RESTATEMENT (SECOND) OF CONTRACTS § 63(b) (1981). Although by establishing a specific time period in which a tenant may express interest in response to the owner's offer of sale, the TOPA scheme bears some superficial similarity to an option contract, closer scrutiny reveals that the analogy is misguided. An option contract is an agreed-upon exchange that, in the words of the Restatement, "limits the promisor's power to revoke an offer." *Id.* at § 25. "The key distinction between an option to purchase and a contract of sale is that an option does not impose a binding obligation to complete the purchase." *Am. Combustion, Inc. v. Minority Bus. Opportunity Comm'n*, 441 A.2d 660, 667 (D.C. 1982). *See also Ammerman v. City Stores Co.*, 129 U.S.App.D.C. 325, 329, 394 F.2d 950, 954 (1968) ("An option is more than an offer ... it is itself a contract and is not to be confused with the bilateral contract which it gives the optionee the power to bring into being."). TOPA, on the other hand, imposes a statutory obligation on the owner to first offer the property for sale to the tenant before offering it to the general public, and a corresponding obligation on the tenant to timely notify the owner if the tenant intends to purchase the property. Under TOPA, the owner's offer of sale is not an option contract that must be held open, in exchange for valuable consideration from the tenant, during the prescribed statutory time period. *See Hackney v. Morelite Constr., D.C. Corp.*, 418 A.2d 1062, 1067–68 (D.C.1980) (finding an option contract where "(1) ... appellee ...

---

**2.** The legislature recently amended TOPA to allow the time period in which a tenant must respond to commence upon the tenant's receipt of the offer of sale, or the Mayor's receipt of the same, *"whichever is later."* D.C. Law 17–234, § 2(b), 55 D.C.Reg. 9014, 9014–15 (2008). This means that in cases where the tenant receives the offer first, the amendment effectively extends the statutory time period in which the tenant may respond.

made a promise to keep open an offer to sell the disputed property 'for a fixed or reasonable period of time' ... (2) that the promise was 'given for valuable consideration' ... and (3) that both the property and the term of the option offered were described in sufficient particularity...."). Unlike in an option contract, TOPA does not preclude the owner from revoking the offer during the statutory time period— the essence of an option contract.[3]

The reason why the "mailbox rule" is not applied to an option contract is the need for a "dependable basis for decision whether to exercise the option." RESTATEMENT (SECOND) OF CONTRACTS § 63 cmt. f. Thus, whereas in the usual contract for sale the mailbox rule allocates the risk of loss or delay in delivering an acceptance on the offeror to allow for the fact that the offer may be revoked prior to acceptance, there is no similar reason to shift the risk in an option contract where the offeror's right to revoke the offer is already restricted by contract. In short, although the TOPA scheme and option contracts both share the element of having specific time periods in which the offeree has to notify acceptance or exercise of the option, under the TOPA statute the tenant tenders no valuable consideration, as required in a valid option contract, and the owner

may revoke the offer of sale even within the statutory time period, prior to acceptance. Therefore, there is no reason for abandoning the "mailbox rule" that normally applies to contracts for sale, as there is in the case of option contracts.

The rule articulated by the majority that the tenant's acceptance must be received by the owner to be effective would be beneficial in providing certainty to the owner, and it could be considered—as the majority does—that the better policy is therefore to require that a tenant deliver the statement of interest within the statutory time period. But the statute does not permit this interpretation if it is at the expense of the tenant's right because the legislative command to the court is that any ambiguity be resolved in favor of "strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." D.C.Code § 42–3505.11 (2001).[4] In a recent amendment, the legislature has demonstrated its intention to afford the tenant not only plenary use of the statutory period, but even an implicit extension. See *supra*, note 2. Resolution of the meaning of the word "provide" as used in the statute, therefore, must favor allowing tenants the full statutory period to consider and respond to the owner's offer. I therefore

---

**3.** In many situations under TOPA, the owner's offer and the tenant's expression of interest to purchase may simply initiate a period of negotiation, which may or may not result in a contract of sale. However, because TOPA requires that the owner make a firm offer of sale to a tenant, there might be cases where application of principles of contract law renders the tenant's expression of interest an acceptance of the offer of sale that creates an enforceable contract of sale. *See 1836 S St. Tenants' Ass'n, Inc. v. Estate of Battle*, 965 A.2d 832 (2009). In this case, because the record does not contain the owner's offer of sale, only the tenant's expression of interest, it is inadequate to determine whether a binding contract was created.

**4.** Unlike in contract cases, where the competing interpretations of interested parties do not suffice to render a contract's terms ambiguous, the differing statutory interpretations of impartial judges does signify that terms are capable of more than one meaning. *See Lincoln Sav. Bank, S.A. v. Wis. Dep't of Revenue*, 215 Wis.2d 430, 573 N.W.2d 522, 531 (1998) (Abrahamson, C.J., concurring) ("[W]hen courts or judges disagree about the interpretation of a law, the law is, by definition capable of being understood in two or more different senses by reasonably well-informed persons....").

dissent, and would affirm the trial court's judgment enforcing the tenant's TOPA rights.