*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-PR-0337

IN RE AM. H., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(2022-INT-000036)

(Hon. Carmen G. McLean, Trial Judge)

(Submitted June 13, 2023                    Decided August 17, 2023)

*Matthew Frumin* was on the brief for appellant.

*Lisa Ellern-Feldman* was on the brief for appellee.

Before MCLEESE and DEAHL, *Associate Judges*, and THOMPSON, *Senior Judge*.

Opinion for the court by *Associate Judge* MCLEESE.

Concurring opinion by *Senior Judge* THOMPSON at page 13.

MCLEESE, *Associate Judge*: Appellant Am. H. seeks review of an order appointing her mother, appellee Al. H., as Am. H.'s guardian, over Am. H.'s objection. We vacate the order and remand for further proceedings.

## I. Factual and Procedural Background

Am. H. has been diagnosed with metastatic cancer, and a court-appointed examiner concluded that she has severe cognitive impairment, suffers from heroin and fentanyl addiction, lacks insight into her condition, and is unable to make sound personal decisions. It is undisputed that a guardian should be appointed for Am. H. *See* D.C. Code § 21-2044(b) (court may appoint guardian "if it is satisfied that the individual for whom a guardian is sought is incapacitated and that the appointment is necessary as a means of providing continuing care and supervision of the . . . incapacitated individual"); *see also* D.C. Code § 21-2011(11) (defining "incapacitated individual" to mean "an adult whose ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian"). The disputed issue is whether Al. H. was properly appointed as that guardian over Am. H.'s objection, or whether instead a guardian should have been appointed from the list of court-approved guardians, which was Am. H.'s stated preference.

The trial court held a hearing on the petition to appoint a guardian. The information presented at the hearing included the following. Am. H.'s guardian ad litem, Jonathan Leo, stated that Am. H. had clearly indicated that she did not wish Al. H. to be appointed as guardian. Mr. Leo opined that Am. H. "didn't articulate a great reason why." Mr. Leo expressed the view that appointing Al. H. would be in Am. H.'s best interests. On the other hand, Mr. Leo argued that Am. H. had the capacity to express a preference as to who should be appointed and that Am. H.'s preference "deserves heavy weight."

The report of a court-appointed examiner recommended that a guardian be appointed from the list of court-approved guardians, but the report did not discuss the possibility of appointing Al. H.

Am. H.'s attorney represented that Am. H. did not wish Al. H. to be appointed as guardian but was receptive to a guardian being appointed from list of court-approved guardians.

Am. H. stated at the hearing that she did not want Al. H. to be appointed as guardian, explaining that she would prefer that Al. H. focus on providing care for

Am. H.'s children. Am. H. acknowledged that Al. H. "has done everything for [Am. H.] ever since [Am. H.] was little."

Counsel for Al. H. acknowledged that Am. H. did not want Al. H. to be appointed as guardian, but (1) represented that Am. H. had originally wanted "her fellow drug abuser boyfriend" to be appointed guardian; and (2) suggested that Am. H. may have been blaming Al. H. for preventing Am. H. from receiving heroin while in the hospital.

Am. H.'s sister and brother-in-law supported the appointment of Al. H. Am. H.'s brother-in-law opined that Am. H. might perceive going home to live with Al. H. "as a restriction on her freedoms," because Am. H. might be forced to follow rules. He also expressed the view that living with Al. H. might permit Am. H. to rekindle her relationships with her children.

Al. H. acknowledged that dealing with Am. H.'s medical issues would be difficult for both of them. Al. H. explained, however, that she had been Am. H.'s advocate, "fiercest protector," "ally, and defender," through many challenges. Al. H. knew how to take care of Am. H.'s medical needs and how to advocate for Am. H. with medical personnel. Al. H. said that caring for Am. H. would not be a

burden; rather, it would be a burden to Al. H. to not care for Am. H. Noting that Am. H. was currently estranged from her twelve-year-old daughter, who lived with Al. H., Al. H. explained that both Am. H. and Am. H.'s daughter could benefit if Am. H. came to live with Al. H. Al. H. told Am. H. that she loved her, and Am. H. said that she loved Al. H. too.

The trial court stated that it took "very seriously" the requirement to "defer" to Am. H.'s preference as to guardian. The trial court found that Al. H. was very familiar with Am. H.'s needs and was "very dedicated to taking whatever steps are necessary to get [Am. H.] what she needs." Acting in Am. H.'s "best interests," the trial court therefore appointed Al. H. as guardian.

## II. Analysis

The court's authority to appoint a guardian for an incapacitated individual must be exercised "so as to encourage the development of maximum self-reliance and independence of the incapacitated individual." D.C. Code § 21-2044(a); *see also* D.C. § 21-2004 (incapacitated persons "shall retain all legal rights and abilities" except as specifically provided). More broadly, "[a] principal theme of the Guardianship Act is that the wishes of the subject of an intervention proceeding

regarding the decisions to be made are entitled to consideration and respect—notwithstanding that the subject of the proceeding is incapacitated . . . ." *In re Orshansky*, 804 A.2d 1077, 1093 (D.C. 2002).

The general statutory policy of respecting and fostering the autonomy of incapacitated persons, to the extent reasonably possible, is reflected in the specific provision governing the selection of a guardian. If the incapacitated person has a preference as to who will be appointed guardian, that preference must be honored "[u]nless lack of qualification or other good cause dictates the contrary." D.C. Code § 21-2043(b) (preference can be expressed through "current stated wishes" or most recent power of attorney).

The concurrence takes the view that the phrase "current stated wishes" refers not solely to the incapacitated person's wishes as to who will be appointed guardian, but rather includes more broadly the incapacitated person's "priorities and values." *Infra* at 13. We disagree. Section 21-2043(b) requires the court to appoint a guardian "in accordance with the individual's current stated wishes or his or her most recent nomination in a durable power of attorney," "[u]nless lack of qualification or other good cause dictates the contrary." We view that language as clearly focused on the incapacitated person's wishes as to who will be appointed guardian. Thus, if

an incapacitated person says generally that she wants the best guardian but also requests a specific person as guardian, we do not believe that the trial court would comply with the requirements of § 21-2043(b) by appointing a different guardian on the theory that doing so was in accord with the incapacitated person's "current stated wishes" that the best guardian be appointed.

Although we disagree with the concurrence as to how to interpret the phrase "current stated wishes," we agree with the concurrence that considerations the concurrence discusses, *infra* at 13-17, are potentially relevant. In our view, however, those considerations are potentially relevant to the question whether "good cause dictates" that the trial court override the incapacitated person's preference.

This appeal also requires us to interpret the phrase "good cause dictates the contrary." D.C. Code § 21-2043(b). We decide that legal issue de novo. *E.g.*, *Roberts v. United States*, 216 A.3d 870, 876 (D.C. 2019). "In determining the correct reading of statutory language, we consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020).

Considered in isolation, the phrase "good cause" is generally understood to leave broad discretion to the decision-maker. *See, e.g.*, *DC Pres. League v. Mayor's Agent for Hist. Pres.*, 236 A.3d 373, 384 (D.C. 2020) ("'Good cause' depends upon the circumstances of the individual case, and a finding of its existence (or nonexistence) lies largely in the discretion of the officer or court to which the decision is committed. By its very nature, 'good cause' requires the evaluation of a number of subtle factors, a task properly given to the [decision-maker] most experienced in dealing with such factors in the first instance. In the absence of an abuse of the [decision-maker's] discretion in that evaluation, we are bound by that good cause or lack of good cause determination.") (internal quotation marks omitted). As we have explained, however, "we do not read statutory words in isolation; the language of surrounding and related paragraphs may be instrumental to understanding them. We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. Statutory interpretation is a holistic endeavor." *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (en banc) (citations and internal quotation marks omitted).

Several features of the statutory scheme persuade us that a trial court's authority to override an incapacitated person's preference is quite narrow. First and most broadly, as previously noted, the Guardianship Act directs the trial court to

exercise its authority so as to respect and foster the autonomy of incapacitated individuals. D.C. Code § 21-2044(a).

Second, the Guardianship Act also creates a set of priorities among possible guardians, which apply if the incapacitated person does not express a preference or if the court finds good cause to override the incapacitated person's preference. D.C. Code § 21-2043(c). The trial court may choose a guardian with lower priority if doing so is "in the best interest" of the incapacitated person. D.C. Code § 21-2043(d). The trial court is not given the authority, however, to override the incapacitated person's choice of guardian merely because the trial court believes that doing so would be in the best interest of the incapacitated person.

Third, the term "dictates" indicates the need for a compelling basis before the trial court can appropriately override the preference of the incapacitated person. *See, e.g.*, *Dictate*, *Black's Law Dictionary* 549 (10th ed. 2014) ("2. To order; to command authoritatively."); *Dictate*, *Webster's Third New International Dictionary* 627 (2002) (*vt.* "2c: to require or determine necessarily"); *cf. Williams v. Taylor*, 529 U.S. 362, 409 (2000) (holding is "dictated by precedent," for purposes of retroactivity analysis, if "*all reasonable jurists* would have deemed themselves compelled" by existing precedent to so hold) (internal quotation marks omitted).

These considerations lead us to conclude that an incapacitated individual's preferred guardian must be appointed unless (1) the preferred guardian is ineligible (i.e., is not qualified or is burdened by a conflict of interest, D.C. Code § 21-2043(a-1), (b)); or (2) compelling circumstances justify overriding the preference. This conclusion finds further support from out-of-jurisdiction guardianship cases involving the same statutory language ("unless lack of qualification or other good cause dictates the contrary"). In *Yates v. Rathbun*, 984 So. 2d 1189 (Ala. Civ. App. 2007), the court affirmed a trial judge's decision to appoint an incapacitated person's preferred guardian (a stepdaughter). *Id.* at 1195-96. The court explained that "it is not enough that the challenger prove that a better guardian could be appointed; rather, the challenger must prove that the circumstances compel the determination that the ward's selection should not be honored." *Id.* at 1196; *see also id.* ("[T]he issue is not whether [the husband] could act better as . . . guardian, but whether good cause existed to dictate that [the step-daughter] could not or should not act as . . . guardian."). In contrast, *In re Guardianship of R.G.*, 879 N.W.2d 416 (N.D. 2016), upheld a trial court's order refusing to appoint an incapacitated person's preferred guardian (a nephew), because the trial court reasonably found good cause to do otherwise based on concerns about "family conflict and the appearance of undue influence." *Id.* at 421-23.

To be clear, we do not mean to imply that an incapacitated person's preference can be overridden only if the preferred guardian has some specific defect. Such an approach would run the risk of collapsing "good cause" into "lack of qualification." We therefore leave open the possibility that a trial court might in sufficiently compelling circumstances appropriately appoint a guardian that the incapacitated person did not prefer, because appointment of that guardian would be so superior to the appointment of the incapacitated person's preferred guardian as to outweigh the heavy interest in honoring the incapacitated person's preference.

In light of this interpretation of § 21-2043(b), we conclude that the trial court's order must be vacated. First, although the trial court said that it took Am. H.'s preference "very seriously," the trial court's ultimate explanation of its ruling explicitly rested on a determination only as to Am. H.'s best interest. Second, the trial court did not explain why it was critical that Al. H. be the guardian, as opposed to being available as a resource to a guardian. Third, the trial court did not make specific findings that might support a finding of compelling circumstances. Finally, the trial court did not expressly take into account the potential adverse consequences of overriding Am. H.'s preference. We therefore vacate the trial court's order appointing Al. H. and remand the case for further proceedings.

We do not share our concurring colleague's view that the trial court's task upon remand might be to simply make more explicit the reasons underlying her appointment of Al. H. as guardian. *Infra* at 13. Instead, the trial court's previously stated reasons for appointing Al. H. as guardian suggest that the trial court was almost entirely focused on the best interests of Am. H. without giving adequate weight to respecting the autonomy of incapacitated persons, as D.C. Code § 21-2043(b) requires. We believe the task for the trial court on remand is a fresh assessment of the relevant interests in light of the legal principles we have explained in this opinion.

We express no view as to the proper disposition of this case on remand. We similarly express no view as to whether it would be appropriate on remand to reopen the record to permit the interested parties to present additional evidence in light of the principles announced in this decision. We leave those matters to the trial court in the first instance.

For the foregoing reasons, the judgment of the Superior Court is vacated and the case is remanded for further proceedings.

*So ordered.*

THOMPSON, *Senior Judge,* concurring in the remand:  I agree with my colleagues' decision to remand.  I think, however, that the trial court's task upon remand may amount to no more than making explicit the reasoning by which it decided to appoint Al. H. as guardian for Am. H. and showing how that reasoning satisfied the principles articulated in the court's opinion.  In any event, I write separately to make two points.

My first point relates to how we should interpret the Guardianship Act's instruction that "[u]nless lack of qualification or other good cause dictates the contrary, the court shall appoint a guardian in accordance with the incapacitated individual's current stated wishes or his or her most recent nomination in a durable power of attorney." D.C. Code § 21-2043(b). In my view, the statutory term "current stated wishes" need not be interpreted to refer only to the person's stated wishes about who should or should not be named guardian (although that might be the extent of what a person has expressed via the nomination in a durable power of attorney). I believe the statutory language ("current stated wishes") should be read to permit the trial court to take into account the incapacitated person's expression of her priorities and values (i.e., her wishes for her life), and not merely her expression of a preference as to who should be her guardian, particularly where (as here) the court has the benefit of expert testimony to the effect that the person is unable to fully

appreciate her situation and has poor insight and judgment (e.g., about what will enable the fulfillment of her values and priorities). I believe that the statutory exception for "good cause" must be read to afford the trial court such flexibility.[1]

---

[1] *Cf. Ramirez v. Salvaterra*, 232 A.3d 169, 196-97 (D.C. 2020) (Glickman, J., dissenting in part and concurring in the judgment) (reasoning that use of the "somewhat indefinite" term "good cause" "giv[es] the parties and the court the power and flexibility, in accord with the purposes of the [governing statute], to seek remedies appropriate to their needs"); *Hinton v. United States*, 979 A.2d 663, 678-80 (D.C. 2009) (en banc) (reasoning that "good cause," a term ultimately omitted from Super. Ct. Crim. R. 24(c), would have implied broad trial court discretion and inherent authority, going beyond reasons specified in the Rule). Moreover, the contrast between the usage in § 21-2043(b) ("unless . . . other good cause dictates the contrary") and the usage in D.C. Code § § 21-2041(d) and (h) ("absent good cause shown" and "unless good cause is shown") supports an interpretation that the court's reason for appointing a guardian contrary to the incapacitated person's expressed preference need not be a reason explicitly advocated or demonstrated by the parties.

I also find support for my view (that the statutory language is properly read to permit the trial court to take into account the incapacitated person's expression of her priorities) in our legislature's instruction that even counsel for the incapacitated person — who is obligated to advocate for the actual expressed wishes of the incapacitated client (and not merely for the client's "legitimate wishes") — "must actively investigate and fight for a guardianship that matches the needs and desires of the subject of [a guardianship] proceeding." The Guardianship Amendment Act of 2014, Report on Bill No. 20-710 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia, at 6-7 (Nov. 25, 2014) ("Report on Bill No. 20-710"). That even counsel is obligated to fight for the person's "needs and desires" suggests a broader focus than the person's stated preference as to who should or should not be the guardian.

In this case, the trial court heard Am. H.'s testimony that her "priority is [her] kids." In addition, the court heard the testimony of Al. H., Am. H.'s mother, and the testimony of other family members that living in Al. H.'s home would give Am. H. an opportunity to build a relationship with her children (in particular her estranged daughter), who are being raised by Al. H. It would not have been an abuse of discretion for the trial court to consider what guardianship appointment would best be in accordance with the priority that Am. H. assigned to the welfare of her children. Further, a family member suggested to the court in his testimony that being in Al. H.'s home would give Am. H. the opportunity to "be a parent to some extent." Because, in appointing a guardian, the court is obligated to "encourage the development of maximum self-reliance and independence of the incapacitated individual," D.C. Code § 21-2044(a), I believe the court could properly take into account how a guardianship appointment might encourage Am. H.'s self-reliance in attending to the needs of her children.

My second point relates to the following: In cases like this one involving intra-family disputes, where the fact patterns may be "so novel that experience has not prescribed the dimensions of a workable rule," the trial court's exercise of its discretion and judgment may rest more than usually on the trial court's superior opportunity to get the feel of the case. *Johnson v. United States*, 398 A.2d 354, 362

(D.C. 1979). To be sure, the court heard the representation of Am. H.'s counsel to the effect that Al. H. was "the one person [Am. H.] explicitly asked not be named her guardian" and also heard Am. H.'s testimony that she preferred that Al. H. not be her guardian. But the court also heard Am. H.'s explanation that she "would like for [Al. H.] to just take care of [Am. H.'s] kids more than [Am. H.]." Further, the court heard Al. H.'s testimony that she understood Am. H. to be saying that she did not want to be a burden to her mother and Al. H.'s statement — addressing both the court and Am. H. — that it would not be a burden for her to be Am. H.'s guardian.[2] Am. H. did not dispute that explanation when given an opportunity for follow-up testimony. And the court heard both Al. H.'s testimony that she loves Am. H., and Am. H.'s acknowledgment that Al. H. had "done everything for [her]" and that she loves Al. H., too.

We have said that "[i]n authorizing a court to empower a guardian . . . to assume responsibility for the person and affairs of an incapacitated individual, the Guardianship Act establishes an elevated benchmark of informed and careful decision making that is commensurate with the gravity of the decision." *In re Orshansky*, 804 A.2d 1077, 1098-99 (D.C. 2002). We have also said that

---

[2] The guardian ad litem also testified that Al. H. "cares very much for" Am. H. and has "done a lot to help" Am. H., including raising Am. H.'s three children.

determinations of "good cause" require the trial court to "evaluate the entire mosaic of the case." *Ramirez*, 232 A.3d at 173. In my view, nothing in the decision of the court should be understood to indicate that as part of its careful decision-making in a guardianship case, the trial court must necessarily take the stated preference of an incapacitated person as to who should be her guardian at face value, without taking into account and scrutinizing the entire mosaic of family dynamics that may influence the person's expression of that preference.